TUTERRI'S, INC., Respondent,

v.

HARTFORD STEAM BOILER INSPEC-
TION AND INSURANCE COMPA-
NY, et al., Appellant.

No. WD 49116.

Missouri Court of Appeals,
Western District.

March 14, 1995.

Candis Young, Shook, Hardy & Bacon, Kansas City, for respondent.

Before SPINDEN, P.J., and LOWENSTEIN and ELLIS, JJ.

ELLIS, Judge.

Tuterri's, Inc., is a Missouri corporation located in Kansas City, Missouri, engaged in the business of manufacturing and selling hand-made gourmet pasta products through-

out the United States. Terri Webb McMillin, the founder and president of Tuterri's, is responsible for all accounting, financial, marketing, sales and contractual matters for the company. As such, she is responsible for obtaining insurance for Tuterri's. McMillin purchased all of Tuterri's insurance through R.J. Metzler & Company, an independent insurance agency in Kansas City, Missouri. R.J. Metzler & Company's president, Robert Metzler, a licensed independent insurance agent, handled all of Tuterri's insurance matters.

In May, 1990, on Metzler's recommendation, McMillin purchased boiler and machinery insurance for Tuterri's. Metzler obtained the boiler and machinery insurance policy from Hartford Steam Boiler Inspection and Insurance Company ("Hartford"), an insurance agency engaged in the business of selling boiler and machinery insurance.[1] After R.J. Metzler & Company applied for the insurance policy, Hartford issued and mailed the policy to R.J. Metzler & Company where it was reviewed by the agency and then personally delivered by Robert Metzler to McMillin on July 24, 1990. The policy Hartford issued to Tuterri's included its basic boiler and machinery insurance plus a special endorsement ("Endorsement L") providing for business interruption coverage.

Tuterri's experienced equipment failures on July 19, 1990, August 8, 1990, and September 25, 1990, all three of which resulted in business interruption.[2] The parties do not dispute that each of these machinery failures fell within the definition of "accident" under the policy and that the policy was in effect at the time of each failure. The direct damage to the equipment in each instance was less than the deductible on the policy, so payment for repair of the equipment is not at issue. However, Hartford disputes its liability for coverage of the business interruptions which occurred as a result of the three equipment failures. In each instance, Tuterri's notified R.J. Metzler & Company of the accidents

1. As an independent insurance agency, R.J. Metzler & Company could have placed the business with any number of insurance companies. It was Metzler's decision to obtain the policy from Hartford, who specializes in this type of insurance.

2. After the July 19 accident, normal operations resumed on July 26, 1990; after the August 7 accident, operations resumed on August 20; after the September 25 accident, operations resumed on September 27.

within 24 hours of the equipment break-down. In each case, R.J. Metzler & Company told Tuterri's that it would inform Hartford of the accidents. Hartford received notice of the accidents in October, 1990.[3] Neither R.J. Metzler & Company nor McMillin submitted documentation to Hartford concerning Tuterri's business interruptions until November 20, 1990, when McMillin wrote to Hartford and advised it of the calculation of Tuterri's business interruption claims. Hartford denied Tuterri's business interruption claims because of late notification of the claims. Tuterri's brought suit in Jackson County Circuit Court against Hartford for non-payment under the terms of Hartford's Comprehensive Equipment Coverage, for vexatious refusal to pay the claims, and in the alternative, against R.J. Metzler & Company for negligence in processing the claims. Hartford filed a cross-claim against R.J. Metzler & Company for indemnification and R.J. Metzler & Company cross-claimed against Hartford for expenses and punitive damages.

The case was tried and submitted to a jury, which returned a verdict in favor of Tuterri's against Hartford in the sum of $54,133.79. The jury allocated the amount as $45,000 "on the policy" and $9,133.79 "for interest." On the claim of Hartford against R.J. Metzler & Company, the jury returned a verdict in favor of R.J. Metzler & Company and, on the Metzler claim against Hartford, awarded R.J. Metzler & Co. $1.00 in damages. Hartford appeals the jury's verdict in favor of Tuterri's, but does not appeal the verdicts as to Metzler. Although Hartford does not appeal the verdict as it applies to Metzler, Metzler intervened and filed a brief to protect its interest in this appeal.

Hartford raises two points on appeal. First, it contends the trial court erred in not directing a verdict for Hartford at the close of all of the evidence because there was no evidence of any insurance coverage in accordance with the terms and conditions of the insurance policy. Second, Hartford contends

the trial court erred in not granting a new trial or remittitur on the issue of damages because the jury's damage award was excessive and was the result of the jury improperly including attorneys' fees in its calculation of damages.

In its first point, Hartford contends the business interruptions experienced by Tuterri's were not covered by its policy because it did not receive timely notice. Hartford points to the following language in Endorsement L:

4. *Notice of "Accident" and Commencement of Liability*

At our expense, you must immediately give notice of "accident" to any of our offices. You must confirm that notice in writing. Our liability under this coverage starts:

a. At the time of the "accident"; or

b. 24 hours before we receive notice of "accident"; whichever is later.

Hartford claims that under this language, coverage for business interruption is triggered when it receives notice. Since Hartford had not received notice until after the business interruption had terminated in each instance, Hartford contends its liability for the business interruption never started.

Hartford correctly states that except to the extent limited by public policy or statute, parties to an insurance contract are free to place limitations and restrictions on the insurer's liability, *Douthet v. State Farm Mut. Auto. Ins. Co.*, 546 S.W.2d 156, 157 (Mo. banc 1977), and where the language in an insurance policy is unequivocal, it is to be given its plain meaning, even in a restrictive provision of the policy. *Luyties Pharmacal Co. v. Frederick Co.*, 716 S.W.2d 831, 835 (Mo.App.1986). Furthermore, the insured under an insurance policy must bring itself within the terms of the policy and has the burden of proving by substantial evidence that the claim sued on is within the coverage provided by the terms of the insurance contract. *Grossman Iron & Steel Co. v. Bitumi-*

---

**3.** Hartford received notice of the September 25 accident on October 4, 1990. This notice had apparently been typed by R.J. Metzler & Company employees on September 27. Hartford learned of the two earlier accidents on October 9, 1990, when its boiler inspector was at Tuter-

ri's investigating the circumstances of the September 25 accident. At that time, Tuterri's vice president informed the inspector of the earlier accidents. Hartford received the written notices concerning the two earlier accidents on October 11, 1990.

*nous Casualty Corp.*, 558 S.W.2d 255, 259 (Mo.App.1977). In the case at bar, the parties do not dispute that the business interruptions would be covered under the policy but for the notice issue. It is Hartford's contention that Tuterri's failed to meet its burden of showing the claims fall within the policy because under the plain language of the business interruption endorsement, the interruptions were never covered.

However, Missouri law has departed from such harsh interpretation of insurance contracts on the particular issue of delayed notice. Specifically, the Director of Insurance, as authorized under § 374.045, RSMo 1994, adopted the following regulation to aid the interpretation of sections of the Unfair Trade Practice Act:

> No insurer shall deny any claim based upon the insured's failure to submit a written notice of loss within a specified time following any loss, unless this failure operates to prejudice the rights of the insurer.

20 C.S.R. 100–1.020.

■ Furthermore, a line of Missouri cases have held that where the insured either fails to file a proof of claim or delays in doing so, the insurer must allege and prove that prejudice resulted from the delay in order to sustain the defense of delayed notice. *Schultz v. Queen Ins. Co.*, 399 S.W.2d 230, 234 (Mo.App.1966); *Katz Drug Co. v. Commercial Standard Ins. Co.*, 647 S.W.2d 831, 836 (Mo.App.1983); *May v. Maryland Casualty Corp.*, 792 F.Supp. 63, 67 (E.D.Mo.1992); *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15, 31 (Mo.1969); *Dickhans v. Missouri Property Ins. Placement Facility*, 705 S.W.2d 104, 106–07 (Mo.App.1986). Hartford attempts to distinguish this line of cases requiring prejudice from delayed notice on the basis of the language contained in the policies.[4] This distinction is irrelevant, particularly in light of the clear language of the regulation.

In addition, Hartford pleaded as an affirmative defense that Tuterri's violated the policy notice requirement. At trial, Hartford requested, and the court submitted, M.A.I. 32.24 as Instruction No. 10. It required the

jury to find Hartford was prejudiced in order to prevail on this defense. Instruction No. 10 stated:

> Your verdict must be for [Hartford] on plaintiff's claim for damages if you believe:
>
> First, plaintiff failed to notify [Hartford] of the accident as required by the policy, *and*
>
> Second, *[Hartford] was thereby prejudiced.*

(Emphasis added). Consequently, under Hartford's instruction, the jury was required, as they should have been, to consider prejudice to Hartford in determining its verdict.

■ On the issue of prejudice, Tuterri's presented evidence at trial regarding the actions it took to repair the damaged equipment in each of the three instances and its efforts to resume production as quickly as possible so as to meet deadlines on important orders. More importantly, Mr. Tracy Smith, Hartford's representative, testified at trial that the purpose of the 24–hour notice provision is to allow Hartford to assist the insured in resuming production as quickly as possible. He testified that Hartford could not have arranged to have the equipment repaired sooner than Tuterri's did, nor could Hartford have aided in getting production resumed more quickly. In fact, not only did Hartford fail to establish it was prejudiced by the delay in being notified of the accidents, Mr. Smith specifically testified that Hartford *was not prejudiced* by any of the instances of late notice. Thus since Hartford was not prejudiced in any way by the delay in notice, its argument that the trial court should have directed a verdict in its favor on that basis is without merit.

Hartford also alleges under Point I that neither R.J. Metzler & Company nor Robert Metzler was Hartford's agent for purposes of receiving notice or handling claims on its behalf. Even assuming, *arguendo*, that neither Metzler nor his company were agents for Hartford, we have already established that because Hartford was not prejudiced by the delay in notice, it is precluded from denying coverage on that basis. This is true

---

4. In particular, Hartford's notice provision is worded so that coverage *starts* upon notice, whereas the notice provisions in the cited cases are worded to require prompt or reasonable notice after the fact.

regardless of whether R.J. Metzler & Company or Robert Metzler were the agents of Hartford. Point I is denied.

In Point II, Hartford contends the trial court erred in not granting a new trial or remittitur on the issue of damages because the jury's damage award was excessive in that it was the result of the jury improperly including attorneys' fees in its calculation of damages.

Hartford's argument is without merit. The verdict form completed by the jury stated:

> We, the undersigned jurors, assess the damages of plaintiff Tuterri's as follows:
>
> On the policy $/45,000.00/ (stating the amount).
>
> For interest $/9,133.79/ (stating the amount or, if none, write the word "none").
>
> For penalty $/none/ (stating the amount or, if none, write the word "none").
>
> For attorney fees $/none/ (stating the amount or, if none, write the word "none").[5]

Obviously, the jury did not award attorneys fees. In fact, it expressly denied attorneys fees.

Despite this, Hartford contends the jury must have assessed attorneys' fees because McMillin's damage calculations totaled $31,472.14 plus interest of $9,133.79, totalling $40,605.93.[6] Hartford then points to testimony regarding the contract between Tuterri's and its attorney under which the attorney is to receive a 30% contingency fee. Also, before returning its verdict, the jury sent a note to the court asking:

> Assuming that we want the defendant to pay for all attorney fees, should we inflat [sic] the dollar award under verdict "A" to include the 30% contingency fee that attorney firm [sic] will receive?

The court responded:

> It is the jury's duty to remember the evidence and follow the instructions.

According to Hartford, this court should find the jury's note implies that the jury awarded attorneys' fees as part of their $45,000 award "under the policy" because, according to Hartford, the jury's verdict of $45,000 plus $9,133.79 in interest is approximately 30% more than the damages Tuterri's requested. Therefore, Hartford contends the jury must have improperly included attorneys' fees in its award and thus Hartford is entitled to a new trial or remittitur on the grounds of excessive verdict.

■ "The question of whether or not a new trial should be granted on the ground that a verdict is excessive or inadequate is to determine if the verdict is against the weight of the evidence on that fact issue." *Gardner v. Reynolds*, 775 S.W.2d 173, 175 (Mo.App. 1989). This determination is within the exclusive province of the trial court, and on appeal, we will not weigh the evidence but will determine whether sufficient evidence supports the verdict, considering the evidence in the light most favorable to the prevailing party below, giving that party the benefit of all reasonable inferences and disregarding the other party's evidence except as it may support the verdict. *Id.* "The jury's determination of damages should not be disturbed unless the amount is so grossly excessive that it shocks the conscience of the court." *Id.* The ultimate test is whether the award fairly and justly compensates plaintiff for the injuries sustained. *Id.*

■ Although the jury award is greater than the figure McMillin calculated as her

---

**5.** "Instruction No. 12" instructed the jury as to calculation of damages. It stated:

> If you find in favor of plaintiff on plaintiff's claim on the insurance policy, and if you believe that defendant insurance company refused to pay without reasonable cause or excuse, then, in addition to any amount you may award on the insurance policy under Instruction No. 11, you may award plaintiff an additional amount as a penalty not to exceed twenty percent of the first $1,500.00 of the award on the policy not including interest and ten

> percent of the remainder of such award and you may award plaintiff a reasonable sum for attorney's fees.
>
> On the bottom portion of that page, the jury made the notations "No Penalty" and "Attorney's Fee—No".

**6.** This figure is based on an exhibit entitled "Loss Calculations" submitted by McMillin regarding its damages from the business interruptions and on testimony regarding that exhibit.

damages, the evidence supported the award given by the jury. There was evidence regarding expenses which McMillin did not include in her calculation of damages, including payroll for consultants and for working weekends in an attempt to meet deadlines on important orders. More importantly, Hartford's representative, Tracy Smith, testified that he would have calculated daily overhead at a much higher rate than McMillin did. "[I]f the amount of the award is within the range of evidence, that determination is not erroneous although it is not precisely in accordance with the evidence of either of the parties." *Carmel Energy, Inc. v. Fritter*, 827 S.W.2d 780, 783 (Mo.App.1992). Hartford was required to show that the verdict was glaringly unwarranted by the evidence, and in addition, it had the burden of showing some trial error or misconduct by the prevailing party responsible for prejudicing the jury. *Mullen v. Dayringer*, 705 S.W.2d 531, 536 (Mo.App.1985). Hartford failed in both respects. Other than making the assumption that the jury must have included attorneys' fees, Hartford offers no proof that the jury included attorneys' fees in its award. In fact, in light of the jury's verdict form, the evidence clearly shows the jury did not award attorneys' fees. Point denied.

The judgment is affirmed.

All concur.