**Frederick BEATY and Barbara Beaty, Appellants,**

v.

**ST. LUKE'S HOSPITAL OF KANSAS CITY, Desmond J. Young, M.D., Cardiovascular Consultants, P.C., and Martin Henry Zink, M.D., Respondents.**

**No. WD 69441.**

Missouri Court of Appeals, Western District.

Nov. 17, 2009.

Sherry D. DeJanes, Esq., Kansas City, MO, for appellant.

Marc K. Erickson, Esq., and Jeffrey M. Kuntz, Esq., for St. Lukes and D.J. Young, Timothy M. Aylward, Esq., and Jessica J. Shaw, Esq., for Cardiovascular Const. and MH Zink, Kansas City, MO, for respondent.

BEFORE DIVISION ONE: ALOK AHUJA, Presiding Judge, JAMES M. SMART and LISA WHITE HARDWICK, Judges.

LISA WHITE HARDWICK, Judge.

Following a jury verdict, Frederick and Barbara Beaty appeal a judgment denying their medical negligence claims against the defendants, St. Luke's Hospital of Kansas City, Dr. Desmond Young, Cardiovascular Consultants, P.A., and Dr. Martin Zink III. The Beatys contend the circuit court abused its discretion in: (1) allowing a treating physician to testify as a defense expert after the physician had an *ex parte* contact with defense counsel; and (2) re-stricting their own expert from testifying about a recent physical examination of Mr. Beaty that was not disclosed to the defendants prior to trial. For reasons explained herein, we affirm.

FACTUAL AND PROCEDURAL HISTORY

The Beatys filed a petition alleging medical malpractice against the defendants on June 17, 2005. The allegations arose from a cardiac procedure that Mr. Beaty had under anesthesia at St. Luke's Hospital on January 9, 2004. Mr. Beaty had difficulty regaining consciousness after the procedure and began showing signs of neurological impairment. A CT scan revealed that he had suffered a stroke. The petition alleged that the defendants failed to recognize that Mr. Beaty suffered a stroke either during or after the cardiac procedure and failed to treat the stroke in a timely manner. The petition also alleged a loss of consortium for Mrs. Beaty.

Pursuant to discovery requests, Mr. Beaty signed a medical release authorizing St. Luke's Hospital and Dr. Young to obtain the "use and disclosure of protected health information" from Neurological Consultants. St. Luke's Hospital and Dr. Young subsequently contacted Dr. Charles Weinstein, a neurologist who practiced with Neurological Consultants, and asked him to review medical records. Dr. Weinstein had treated Mr. Beaty at St. Luke's on January 10, 2004, after he began showing signs of neurological impairment.

In response to interrogatories, the defendants designated their expert witnesses. All of the defendants listed Dr. Weinstein as one of seven non-retained experts. The depositions of the parties' retained experts were scheduled and taken. The parties did not depose any of the non-retained experts.

The jury trial began on September 21, 2007. During opening statements, counsel for St. Luke's Hospital and Dr. Young said the jury would hear testimony from Dr. Weinstein, a treating neurologist for Mr. Beaty. The Beatys' counsel objected to Dr. Weinstein's proposed testimony on grounds that it would constitute a violation of the Health Insurance Portability and Accountability Act of 1996, Pub.L. No. 104–191, 110 Stat.1936 (HIPAA), and it would be cumulative to the testimony of a retained expert who was scheduled to testify. The circuit court overruled the objection.

The Beatys subsequently filed a motion to exclude Dr. Weinstein as a trial witness. The motion argued that defense counsel had *ex parte* contacts with Dr. Weinstein, without notice to or authorization from the Beatys, in violation of HIPAA. The motion further argued that the Beatys did not "take seriously" the designation of Dr. Weinstein, listed among other treating physicians, as a non-retained expert. The circuit court denied the motion but recessed the trial for one day to allow the Beatys to file a petition for writ of prohibition in the court of appeals. This court denied the writ.

Following denial of the writ, the parties preserved Dr. Weinstein's testimony for trial in a video-taped deposition. Counsel for the Beatys questioned Dr. Weinstein as follows about his communications with defense counsel:

Q. Now, when was the first time that you were contacted about testifying in this case?

A. I don't recall. It's been several months ago.

Q. Several months ago?

A. Actually, not about testifying.

Q. Okay. Well—

A. I was, in fact, asked to review some data, but I don't think I was asked to testify until about five days ago.

Q. Who asked you to review some data?

A. The attorney here.

Q. That would be Mr. Erickson?

A. Mr. Erickson.

Q. All right. And did you have some prior relationship with Mr. Erickson?

A. No.

Portions of Dr. Weinstein's deposition were later presented to the jury at trial.

The Beatys presented Dr. Nancy Futrell, a neurologist, as an expert witness at trial. Dr. Futrell had been deposed during discovery in October 2006 and April 2007. At that time, she based her opinions on Mr. Beaty's medical records and a videotape of him performing certain tasks and discussing his physical condition.

At trial, Dr. Futrell testified that she knew "from parts of the record *and from [her] examination of the patient*, that he had … problems with his right side." (Emphasis added.) The defendants objected to the testimony about an "examination" as this was a previously undisclosed factual basis for Dr. Futrell's medical opinion. The Beatys' counsel explained that Dr. Futrell had examined Mr. Beaty "last night." After allowing the Beatys to make an offer of proof, the circuit court sustained the objection and instructed the jury to disregard Dr. Futrell's testimony about her examination of Mr. Beaty. The court allowed Dr. Futrell to continue testifying about her opinion of Mr. Beaty's condition based on his medical records and the videotape but not the physical examination.

At the conclusion of the three-week trial, the jury returned a verdict for the defendants. The circuit court entered judgment

on the verdict. The Beatys appeal, contending the court erred in admitting the testimony of Dr. Weinstein and in limiting the testimony of Dr. Futrell.

## STANDARD OF REVIEW

■■■■ We review the circuit court's admission or exclusion of evidence for an abuse of discretion. *Aliff v. Cody*, 26 S.W.3d 309, 314 (Mo.App.2000). An abuse of discretion occurs when the court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* at 315. We defer to the trial court's determination of admissibility because "it is in a superior position to evaluate the proffered evidence in the context of the trial." *Byers v. Cheng*, 238 S.W.3d 717, 726 (Mo.App.2007). To reverse the trial court's determination, we must find that the Beatys were prejudiced because the inclusion or exclusion of evidence materially affected the merits of their action. *Id.*

## ANALYSIS

### *Admission of Dr. Weinstein's Testimony*

The Beatys contend the circuit court erred in admitting Dr. Weinstein's testimony at trial because: (1) defense counsel had improper *ex parte* contacts with Dr. Weinstein that should have led to the exclusion of his testimony under HIPAA; and (2) the defendants failed to "adequately" identify Dr. Weinstein as an expert witness for trial.

Following the enactment of HIPAA in 1996, the Department of Health and Human Services implemented regulations, known as the Privacy Rule, governing the disclosure of "protected health information" (PHI). 45 C.F.R. § 164.502. HIPAA defines "health information" as information that relates to the "physical or mental health or condition of an individual,

the provision of health care to the individual, or ... payment for the provision of healthcare to an individual." 42 U.S.C. § 1320d–(4)(B). Under the Privacy Rule, PHI includes "any information whether oral or recorded in any form or medium." 45 C.F.R. § 160.103.

The Privacy Rule prohibits the disclosure of PHI except as permitted by the regulations. 45 C.F.R. § 164.502(a). One of the regulations allows the disclosure of PHI when the patient has signed a HIPAA–compliant authorization for release of medical information. 45 C.F.R. § 164.508. The authorization must contain "[a] description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion." 45 C.F.R. § 164.508(c)(1)(i). "Thus, to the extent a party seeks to rely on a medical authorization to support disclosure, the Privacy Rule would appear to require that the authorization be worded broadly enough to encompass *ex parte* interviews." *State ex rel. Collins v. Roldan*, 289 S.W.3d 780, 783 (Mo.App.2009).

■■■■ Here, the parties disagree regarding the sufficiency of Mr. Beaty's authorization to comply with HIPAA and permit the defendants to make *ex parte* contact with Dr. Weinstein. However, we need not reach that issue because the record does not establish that Dr. Weinstein disclosed any PHI during his contacts with defense counsel.

During his video-taped deposition, Dr. Weinstein testified that defense counsel had contacted him and asked him to "review some data" regarding Mr. Beaty. That was the full extent of his testimony regarding the *ex parte* contact. Counsel for the Beatys cross-examined Dr. Weinstein but did not inquire into the nature of the data he was requested to review or pursue any further details regarding his

conversation with defense counsel. We find nothing in Dr. Weinstein's testimony to indicate that he disclosed any information about the physical or mental health of Mr. Beaty, the provision of healthcare to Mr. Beaty, or the payment of healthcare for Mr. Beaty. The Beatys have failed to identify any other evidence to establish that Dr. Weinstein disclosed protected health information during his conversation with defense counsel.[1] Accordingly, the record does not support their claim that the *ex parte* contact violated HIPAA's Privacy Rule.

■ The Beatys also contend that Dr. Weinstein should not have been allowed to testify because the defendants did not "adequately" identify him as an expert witness. Specifically, they argue that the defendants did not offer to produce Dr. Weinstein when counsel for the Beatys inquired about the availability of the defendants' experts for depositions.

■ A treating physician, such as Dr. Weinstein, has knowledge of the facts of the case and is not retained solely for the purpose of litigation. *Kehr v. Knapp*, 136 S.W.3d 118, 123 (Mo.App.2004). Although referred to as a non-retained expert, "[t]he treating physician is first and foremost a fact witness, as opposed to an expert witness." *Brandt v. Med. Def. Assocs.*, 856 S.W.2d 667, 673 (Mo. banc 1993). The discovery requirements for identifying a treating physician or non-retained expert are set forth in Rule 56.01(b)(5), which states:

> *Trial Preparations: Non-retained Experts.* A party, through interrogatories, may require any other party to identify each non-retained expert witness, including a party, whom the other

party expects to call at trial who may provide expert witness opinion testimony by providing the expert's name, address, and field of expertise. For the purpose of this Rule 56.01(b)(5), an expert witness is a witness qualified as an expert by knowledge, experience, training, or education giving testimony relative to scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence. Discovery of the facts known and opinions held by such an expert shall be discoverable in the same manner as for lay witnesses.

The defendants fully complied with Rule 56.01(b)(5) by listing Dr. Weinstein as a non-retained expert in response to the Beatys' interrogatory requests. The Beatys assert the defendants were obligated to make Dr. Weinstein available for a deposition, but the discovery rules do not impose such requirement for non-retained experts. As Mr. Beaty's treating physician, Dr. Weinstein was not under the defendants' control. Counsel for the Beatys could have contacted Dr. Weinstein directly and scheduled an interview or his deposition without any assistance from the defendants, but counsel opted not to do so.

Given the timely pre-trial disclosure of Dr. Weinstein as a non-retained expert, the Beatys should not have been surprised when the defendants announced their intention to call him as a witness at trial. The Beatys suffered no prejudice because they had ample time and opportunity to depose Dr. Weinstein prior to trial. Rather, they suffered at their own peril in refusing to "take seriously" the identification of Dr. Weinstein as a non-retained expert. The circuit court properly admitted the deposition of Dr. Weinstein be-

---

**1.** To the extent the "data" disclosed *to* Dr. Weinstein involved medical records containing Mr. Beaty's PHI, that redisclosure would appear to be permissible under the medical authorizations Mr. Beaty executed.

cause the Beatys provided no justifiable grounds for the exclusion of his testimony. Point I is denied.

### Limitation of Dr. Futrell's Testimony

In Point II, the Beatys contend the trial court erred in precluding their expert, Dr. Futrell, from testifying about her physical examination of Mr. Beaty. While acknowledging that the examination occurred less than twenty-four hours prior to Dr. Futrell's testimony, the Beatys argue the timing is insignificant because the examination did not change the opinions Dr. Futrell previously expressed in her deposition. They assert there was "no surprise" to the defendants because the examination results were consistent with what Dr. Futrell had previously seen on the videotape of Mr. Beaty. Further, they assert they were prejudiced by the trial court's decision to limit Dr. Futrell's testimony to her observations from the videotape because the defendants and Dr. Weinstein had emphasized the "hands-on" aspect of their evaluation of Mr. Beaty, thereby undercutting her veracity.

■ In response to the defendants' objection to Dr. Futrell's testimony, the Beatys requested the trial court continue the matter to allow defendants an opportunity to question or re-depose Dr. Futrell. This was the approach taken by the trial court in *Gassen v. Woy*, 785 S.W.2d 601, 604 (Mo.App.1990), and more recently in *Ingram v. Rinehart*, 108 S.W.3d 783, 793–94 (Mo.App.2003). Here, the circuit court denied the request for a continuance but allowed the Beatys to make an offer of proof. Ultimately, Dr. Futrell was limited to testifying about any conclusion reached as a result of her review of Mr. Beaty's medical records and videotape. The Beatys argue the court abused its discretion in refusing to grant a continuance for further deposition on the physical examination conducted by Dr. Futrell.

■ As noted, our review of the exclusion of testimony is for abuse of discretion. *Aliff*, 26 S.W.3d at 314. The trial court is vested with discretion to exclude testimony when an expert provides different testimony from that disclosed in discovery. *See Gassen*, 785 S.W.2d at 604. That can occur if the expert changes the nature of his or her opinion or, as in this case, relies upon new or different facts not previously disclosed. *Id.* The trial court also has broad discretion in determining how to remedy these situations. *Green v. Fleishman*, 882 S.W.2d 219, 222 (Mo.App. 1994). "The very nature of the discretion vested in the trial court recognizes that each case must be determined on its own peculiar facts which bear on the questions of whether that discretion has been abused." *Gassen*, 785 S.W.2d at 604. The court can reject the evidence or fashion some other appropriate remedy. *Whitted v. Healthline Mgmt., Inc.*, 90 S.W.3d 470, 475 (Mo.App.2002).

A continuance of the trial was not warranted in this situation. The Beatys retained and designated Dr. Futrell as their expert witness nearly three years in advance of trial. They unnecessarily created a problem by not having Dr. Futrell examine Mr. Beaty until the night before she was scheduled to testify at trial. At the very least, they could have provided the defendants with notice of their intention to have Dr. Futrell examine Mr. Beaty. By failing to do so, they denied the defendants any opportunity to depose or otherwise discover the full basis for the expert's opinion.

The circuit court crafted a remedy to this injustice by limiting Dr. Futrell's testimony to the information that was produced during discovery. It is difficult to understand how the Beatys were prejudiced by the narrow ruling. If Dr. Futrell's testi-

mony was truly unchanged by her examination, then her examination would have added nothing to the substance of what she told the jury. Additionally, Dr. Futrell's examination of Mr. Beaty related to his "disabilities and abilities" following his stroke. Those are issues related to damages, not liability. The jury found the defendants were not liable for negligence, so the exclusion of this testimony regarding damages would not have prejudiced the outcome of the case. Point II is denied.

### Conclusion

We affirm the circuit court's judgment.

All Concur.