Troy **MYERS**, Plaintiff–Respondent,

v.

**FARM BUREAU TOWN & COUNTRY INSURANCE COMPANY OF MISSOURI**, Defendant–Appellant.

No. SD 30238.

Missouri Court of Appeals,
Southern District,
Division Two.

July 19, 2011.

Timothy J. Wolf, Columbia, MO, for Appellant.

Jacob Y. Garrett, West Plains, MO, for Respondent.

JEFFREY W. BATES, Judge.

Plaintiff Troy Myers (Myers) brought suit against defendant Farm Bureau Town

& Country Insurance Company of Missouri (Farm Bureau) following Farm Bureau's denial of Myers' personal property claim after a fire loss. A jury found in favor of Myers for breach of contract and vexatious refusal to pay, and the trial court entered judgment according to the jury's verdict. Farm Bureau appealed, and Myers filed a motion requesting additional attorney's fees on appeal.

Farm Bureau presents three points for decision. It contends the trial court erred by: (1) denying Farm Bureau's motion for judgment notwithstanding the verdict (JNOV) to make a submissible case on vexatious refusal; (2) giving an erroneous jury instruction submitting Farm Bureau's affirmative defense; and (3) excluding the audio portion of a video exhibit at trial. Finding no merit in any of these contentions, we affirm the judgment. We remand the case to the trial court to conduct a hearing to determine the reasonableness of Myers' requested attorney's fees on appeal and to enter judgment accordingly.

Viewed in the light most favorable to the jury verdict, the facts of the case are as follows. In 1994, Myers built a 1,200–square–foot home in Winona, Missouri (the home), consisting of a living room, a kitchen, two bedrooms and two bathrooms. The home and contents were insured from October 26, 2006 to October 26, 2007 under a homeowner's policy with Farm Bureau (the policy). The policy limits were $64,500 on the dwelling and $48,375 on the personal property in the dwelling. The policy includes a provision specifying no coverage, however, "if any insured intentionally conceals or misrepresents any material fact or circumstance relating to this insurance. . . ."

When the home was built, Myers was married to his first wife, Kathy Sanders (Sanders). They divorced in 1999. In the dissolution agreement, Myers was awarded the home. Together, they had a daughter, who was born in 1990 and lives with Sanders.

Within a year after the divorce, Molly Brawley (Brawley) moved into the home. After approximately three months, Brawley moved out. In 2006, Myers learned that he and Brawley had a daughter who was approximately five years old. In April 2006, Brawley moved back into the home with that daughter and another child from Brawley's previous marriage. Brawley brought with her a bed, bunk beds for the children and a few personal belongings. Because the home was already fully furnished, Brawley stored the majority of her property in her mother's garage. Following the 2006 move, Brawley moved in and out of the home on approximately four occasions until May 2007. Between May 14–17, 2007, Brawley moved her furniture and personal property out of the home. Brawley's ex-husband helped move the larger items, primarily the beds, which all fit in a "six foot Dodge pickup bed."

In May 2007, Myers was working in Buffalo, Missouri, doing bridge repair for the Missouri Department of Transportation. Myers would leave for work on Monday morning and return home on Thursday night. When he came home in mid-May, he learned that Brawley had moved out.

On May 29, 2007 (the day after Memorial Day), Myers rode with a fellow employee to the job site. In the early morning hours of the next day, he received a phone call from Sanders telling him that there had been a fire at the home. When Myers arrived at the home later that morning, he learned that the home had completely burned and was a total loss. Myers immediately called his insurance agent. Later that day, Farm Bureau Claims Representative Peter Hall (Hall) contacted Myers and came by the next day. Hall then

contacted Chris Silman, an expert hired by Farm Bureau, to examine the cause and origin of the fire. Silman concluded that the fire was not suspicious and that it originated from a junction box that was struck by lightning.

Farm Bureau paid the policy limit on the dwelling, $64,500, to Myers' mortgage lender. With respect to the policy limit on the contents in the dwelling, $48,375, Myers submitted a Sworn Statement in Proof of Loss with an attached Personal Property Inventory (the inventory) on July 9, 2007. The personal property loss totaled $68,236.86. Myers maintained throughout these proceedings that every item listed in the inventory was destroyed in the fire and acknowledged that he had a duty to be truthful when he submitted this claim.

After the fire, Myers and Brawley continued to reside together with their daughter in a camper trailer for a few weeks. Brawley left again, however, and took their daughter with her, this time advising Myers that he would never see their daughter again. Myers then told Brawley that, once he received the fire insurance proceeds, he would hire an attorney to obtain custody of their daughter. Between June 2007 and the date of trial in October 2009, Myers had contact with their daughter on only two occasions.

Following their final separation, Brawley told Myers that she was going to contact the arson hotline and "see that you [Myers] did not get any insurance money." Brawley did call the arson hotline, as well as the State Fire Marshal's Office. On June 20, 2007, Brawley called that office and spoke with Regional Chief Investigator Michael Johnson (Johnson). Brawley reported that she believed Myers started the May 2007 fire and misrepresented the contents of the home on his proof of loss form. The next day, Brawley had a meet-ing at the State Fire Marshal's Office and made a written statement in which she said that there were things on Myers' proof of loss inventory that were not destroyed in the fire, but instead were in her possession. Following another written statement submitted by Brawley on July 6, 2007, Johnson obtained the inventory from Farm Bureau. Johnson asked Brawley put an "F" on each line item that was a false or fraudulent claim. Of the 440 items of personal property claimed to be destroyed in the fire, Brawley claimed that 342 were false. If that accusation were true, 78% of Myers' claim would have been falsified. Thereafter, Johnson took photos of items at the homes of Brawley's ex-husband, mother and sister. Johnson relied on Brawley's statements that the items, which were common household items, were the same as those listed in the inventory. Johnson did not contact Myers at all during his investigation. Johnson summarized his investigation in a report, which primarily consisted of Brawley's statements and the photos he took at Brawley's direction.

Brawley also met with Hall. He videotaped personal property that Brawley claimed was in the inventory, but actually was in her possession at the same three locations where Johnson had taken his photographs. Brawley narrated as Hall videotaped the items. In August 2007, Hall asked Myers to provide a sworn statement concerning his personal property claim, which Myers did on August 17, 2007. At that time, Myers was aware of Brawley's accusations against him. Myers explained to Hall that he believed Brawley to be vindictive and that they had a child who was the subject of a developing custody dispute. After Myers provided his sworn statement, Hall refused to speak with Myers about the claim and did not return his calls.

On November 14, 2007, Hall sent a letter to Myers denying his claim for personal property loss. Hall relied on Brawley's statements, his video tour with her, Johnson's report and the policy provision denying coverage for fraud and misrepresentation of claims. Hall never asked Brawley about any type of custody dispute as he didn't consider it important. Thereafter, Myers brought this action against Farm Bureau for breach of the insurance policy contract and vexatious refusal to pay his claim. As an affirmative defense, Farm Bureau claimed that Myers was barred from recovery under the policy because he intentionally misrepresented the extent and amount of his personal property loss in the inventory.

A jury trial in the matter was held in October 2009. Those testifying at trial included Myers, Brawley, Johnson and Hall. Myers' mother and 18–year–old daughter from his first marriage also testified that the items in the inventory were in the home after Brawley moved out and before the fire. Brawley was the only witness who testified that most of the items in the inventory were not destroyed in the fire. She initially testified that Myers moved the property out of the home just before the fire and accused him of intentionally setting the fire. In later testimony, however, Brawley claimed that she was the one who moved most of the personal property out of the home.

The jury found in favor of Myers and awarded him $48,375 on his claim for breach of contract, plus $967.50 interest and $18,000 for attorney's fees on his claim for vexatious refusal to pay. Farm Bureau then filed a motion for JNOV and alternative motion for new trial. Following a hearing, the trial court denied both a JNOV and a new trial. The judge noted that the case turned on credibility and that Brawley was "one of the least credible witnesses" the court had ever observed. The judge explained:

> When it all boils down, Molly Brawley from—I can comment on this since I was sitting there observing evidence, was one of the least credible witnesses I've ever seen in my eighteen years on the bench. I'm not saying the plaintiff was a stellar witness, who was regarded as perfect by the jury, but I think it was clear the jury did not believe Molly Brawley, as the court did not. And, when the investigator representative of the insurance [sic] got up and said they relied on her in denying the claim, to the exclusion of the plaintiff, I think that answered the question for the jury and resulted in the jury verdict. She was extremely un-credible to the court and I believe to the jury in the case. Court sees no basis to justify overturning the jury's verdict at this time. And, quite frankly believes it would be a misjustice [sic] in the case being heard on appeal or litigated and expenses incurred by both sides. I've never said that sort of thing before but, I don't think she was believable to anybody, and that's why they came back with their decision.

This appeal followed. Additional facts will be disclosed as necessary to address Farm Bureau's three points on appeal.

### Point I

■ Farm Bureau's first point contends the trial court erred in denying Farm Bureau's motion for JNOV on Myers' claim for vexatious refusal to pay. Our standard of review of denial of a JNOV is essentially the same as for review of denial of a motion for directed verdict. *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 456–57 (Mo. banc 2006). "A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence." *Id.* In determining the sufficiency

of the evidence to support the jury's verdict, "the evidence is viewed in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict." *Id.*; *D.R. Sherry Constr., Ltd. v. American Family Mut. Ins. Co.,* 316 S.W.3d 899, 907 (Mo. banc 2010). We will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. *Dhyne,* 188 S.W.3d at 457; *Hensley v. Shelter Mut. Ins. Co.,* 210 S.W.3d 455, 464 (Mo.App.2007).

The elements of an action for vexatious refusal to pay are set forth in § 375.420.[1] That statute provides:

> In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

Thus, to establish his claim for vexatious refusal to pay, Myers had to prove that: (1) he had an insurance policy with Farm Bureau; (2) Farm Bureau refused to pay; and (3) Farm Bureau's refusal was without reasonable cause or excuse. *See D.R. Sherry,* 316 S.W.3d at 907; *Hensley,* 210 S.W.3d at 464. Farm Bureau argues that Myers did not prove the third element of his claim—that Farm Bureau's refusal was without reasonable cause or excuse, and that the trial court thereby erred in denying its JNOV. We disagree.

In support of Farm Bureau's argument, it lists several facts in the record to support the reasonableness of its denial of Myers' claim. In *Hensley,* this Court addressed a similar argument stating, that "[b]y framing and arguing the issue in this manner, [insurer] sets itself free from the applicable standard of review." *Hensley,* 210 S.W.3d at 465. "Instead of viewing the evidence in the light most favorable to [insured's] claim that [insurer's] refusal to pay was *without* reasonable cause or excuse, and disregarding all contrary evidence to such claim, [insurer] now argues from all of the facts in the record, even those that conflict with the verdict, that it had reasonable cause or excuse to refuse to pay." *Id.* (italics in original). Such an argument is misplaced because "we do not have such freedom and are confined in our analysis to the applicable standard of review." *Id.* We reach the same conclusion here.

■ Viewing the evidence in the light most favorable to the jury's verdict as we must, there was ample evidence from which the jurors could have concluded that Farm Bureau acted vexatiously by relying on Brawley's allegations to deny liability. In order to believe Brawley's story that Myers set the fire himself, Hall had to disbelieve Farm Bureau's own cause-and-origin expert who concluded the fire was accidental in origin. Hall never gave any

---

1. All references to statutes are to RSMo (2000). All references to rules are to Missouri Court Rules (2009).

explanation of why it was reasonable for him to believe Brawley instead of his own expert. There were other problems with Brawley's story as well. She claimed that Myers moved most of his possessions out of the home before the fire. Unless he was clairvoyant, it is difficult to explain how he could have done so if the fire was accidental in origin, as Farm Bureau's own expert concluded. Moreover, Brawley later changed her story and claimed she was the one who moved the items out of the home. This significant change in Brawley's story provided Farm Bureau with a strong indication that she was not a credible witness. In addition, Hall never investigated whether Brawley had a motivation to lie in order to deprive Myers of funds needed for the custody dispute. The jurors concluded that Farm Bureau's denial of the claim was without reasonable cause or excuse, and we find no basis in the record to overturn the jurors' decision. Accordingly, we hold that the evidence was sufficient to show that Farm Bureau's failure to pay Myers' claim was vexatious. *Travelers Indem. Co. v. Woods*, 663 S.W.2d 392, 397 (Mo.App.1983) (if the only witness that could have elevated a suspicion to a reasonable belief was not to be believed, "then the refusal to pay was vexatious"); *see Laster v. State Farm Fire and Cas. Co.*, 693 S.W.2d 195, 197 (Mo. App.1985) ("[a] refusal to pay, based on a suspicion without substantial facts to support that suspicion, is vexatious"); *see also Hensley*, 210 S.W.3d at 469 (relying on mere speculation is substantial evidence of a "vexatious and recalcitrant attitude"). The trial court properly submitted the issue of vexatious refusal to pay to the jury and did not err in denying Farm Bureau's motion for JNOV. *Hensley*, 210 S.W.3d at 473; *see D.R. Sherry Constr., Ltd. v. American Family Mut. Ins. Co.*, 316 S.W.3d 899, 907 (Mo. banc 2010). Point I is denied.

## Point II

Farm Bureau's second point contends that the trial court erred by giving an erroneous jury instruction. Farm Bureau had asserted as an affirmative defense that Myers intentionally misrepresented his personal property loss and thereby breached a policy condition. There is an MAI instruction for submitting an affirmative defense based upon the breach of a policy condition. MAI 32.24 [1978 New] entitled "Affirmative Defenses—Insurance Policy Defense" states:

Your verdict must be for defendant if you believe:

First, plaintiff (*describe violated policy condition, e.g., "failed to submit a proof of loss to defendant within the time prescribed by the policy "*), and

Second, defendant was thereby prejudiced.

At the instruction conference, Farm Bureau tendered a not-in-MAI instruction to submit its affirmative defense. The trial court declined to give that instruction and instead gave Instruction No. 7, which was submitted by Myers and followed the form required by MAI 32.24. Instruction No. 7 stated:

Your verdict must be for Defendant if you believe:

First, Plaintiff intentionally misrepresented the extent and amount of his loss, and

Second, Defendant was thereby prejudiced.

Farm Bureau objected to Instruction No. 7 "on the grounds that it's not necessary under Missouri law to prove prejudice when you were relying upon affirmative defense of a concealment, fraud, or misrepresentation policy provision." Farm Bureau tendered a not-in-MAI instruction that merely quoted the relevant policy lan-

guage and omitted any reference to prejudice. The trial court denied Farm Bureau's objection and rejected its proffered instruction, explaining:

Folks, basically I'm going to stick with 32.24 because it is MAI, and not go with non-MAI. My interpretation of the use of prejudice here as mentioned earlier, and tried to explain to that bar conference—at the bench conference—was that it was referring to basically material breach of a policy condition. The prejudice was referring to material breaches, and that there would have to be established it was not simply a minor breach in order to be an affirmative defense of this nature. So that's how I read it and I'm sticking with MAI, so I'll overrule the objections and attempt to use the instruction proffered by the plaintiff.

When reviewing whether a jury was properly instructed, our review is *de novo*. *Pool v. Farm Bureau Town & Country Ins. Co. of Missouri*, 311 S.W.3d 895, 903 (Mo.App.2010). "Although our review is *de novo*, we do view the evidence in the light most favorable to the submission of the instruction and we disregard evidence and inferences to the contrary." *Bradford v. BJC Corp. Health Services*, 200 S.W.3d 173, 178–79 (Mo.App.2006). In order for this Court to reverse on instructional error, we must find that the instruction at issue misdirected, misled or confused the jury and prejudice resulted. *Pool*, 311 S.W.3d at 903.

Rule 70.02 governs jury instructions. With respect to the form of an instruction, the rule provides in pertinent part:

Whenever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, *such instruction shall be given to the exclusion of any other instructions on the same subject.* Where an MAI must be modified to fairly submit the issues in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts.

Rule 70.02(b) (italics added). Rule 70.02 further provides that giving an instruction in violation of this rule "*shall constitute error,* its prejudicial effect to be judicially determined, provided that objection has been timely made pursuant to Rule 70.03." Rule 70.02(c) (italics added). "To require the giving of a non-MAI instruction, a party must prove that the MAI instructions submitted to the jury misstate the law." *McBryde v. Ritenour School Dist.*, 207 S.W.3d 162, 168 (Mo.App.2006).

Farm Bureau maintains that Instruction No. 7 imposes an additional element of prejudice on Farm Bureau's misrepresentation defense that is not required by law. As a result, Farm Bureau argues the trial court erred in giving the instruction, entitling Farm Bureau to a new trial. We disagree.

MAI 32.24 is the affirmative defense instruction applicable to insurance policies, such as the policy in this case. The comments state that this instruction should not be given unless there is evidence of a material breach of a policy condition. *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15, 30 (Mo.1969). Farm Bureau relies heavily on *Childers v. State Farm Fire & Cas. Co.*, 799 S.W.2d 138, 142 (Mo. App.1990), for the proposition that its proffered instruction containing only the policy language should have been given to the jury, rather than the applicable and man-

datory MAI instruction. *Childers* contains no discussion of MAI 32.24, nor do we read that opinion to stand for the proposition that the policy language must be used in the instruction. All the *Childers* case discussed was whether the evidence was sufficient to warrant the giving of the instruction, and not whether the form of the instruction was correct. *See Childers,* 799 S.W.2d at 142.[2] Those decisions that do discuss MAI 32.24, however, explain that the pattern instruction is based upon "the general principle ... that in the absence of prejudice to the insurer, the insureds 'failure to comply in some immaterial respect does not justify a disclaimer of liability[.]' " *Valiant v. American Family Mut. Ins. Co.,* 698 S.W.2d 584, 587 (Mo.App.1985) (quoting *Greer,* 441 S.W.2d at 30); *see, e.g., Pannell v. Missouri Ins. Guar. Ass'n,* 595 S.W.2d 339, 347–48 (Mo.App.1980); *see also Weaver v. State Farm Mut. Auto. Ins. Co.,* 936 S.W.2d 818, 820 (Mo. banc 1997); *Tresner v. State Farm Ins. Co.,* 913 S.W.2d 7, 11 (Mo. banc 1995); *Carroll v. Missouri Intergovernmental Risk Mgmt. Ass'n,* 181 S.W.3d 123, 126 (Mo.App.2005); *Tuterri's, Inc. v. Hartford Steam Boiler Inspection and Ins. Co.,* 894 S.W.2d 266, 269 (Mo.App.1995). Farm Bureau has failed to prove that Instruction No. 7, which was patterned after MAI 32.24, misstates the law. *See McBryde,* 207 S.W.3d at 168. Rule 70.02 mandates that "such instruction shall be given to the exclusion of any other instruction on the same subject." Rule 70.02(b); *see* Rule 70.02(c) (to otherwise offer a non-MAI instruction "shall constitute error").

■ Assuming *arguendo* that Instruction No. 7 misstated the law as Farm Bureau suggests, our decision would not change. Based upon our review of the record, Instruction No. 7 certainly did not

so misdirect, mislead or confuse the jury that Farm Bureau was prejudiced. *See Pool,* 311 S.W.3d at 903. The central issue in the case was whether Myers intentionally misrepresented his personal property loss. If the jury believed that he did so, then the prejudice to Farm Bureau was obvious: the company was being asked to pay a fraudulent claim. Myers' proof of loss stated that he lost over $68,000 in personal property due to the fire. Brawley claimed that most of Myers' alleged loss was false. The first paragraph of Instruction No. 7 submitted the misrepresentation issue for the jury's determination, as did other instructions related to Myers' claim under the policy. The jury resolved that factual dispute in Myers' favor and awarded him the full $48,375 policy limit. Thus, it is obvious the jury disbelieved Farm Bureau's assertion that Myers misrepresented his loss. That being the case, we fail to see how the addition of the second paragraph about prejudice in Instruction No. 7 in any way influenced the jury's decision here.

The trial court did not err in giving Instruction No. 7. Point II is denied.

### Point III

Farm Bureau's third point contends the trial court erred in excluding the audio portion of a video exhibit. During Hall's direct testimony, Farm Bureau attempted to offer the video made by Hall which allegedly showed items that Brawley claimed were the personal property items listed in Myers' inventory of his personal property loss. The video also contained statements made by Brawley as she narrated the video while Hall filmed. Myers' counsel objected to the statements being made by Brawley on the video as hearsay

---

**2.** At trial, the judge reached the same conclusion when Farm Bureau relied upon *Childers* as authority for giving its not-in-MAI instruction.

and later clarified that the objection was only directed to the audio portion of the video. After considering the arguments of counsel, the court sustained Myers' objection for the following reason:

> Certainly I agree that this type of testimony, in certain situations, is admissible, not for the truth of the matter asserted but on the claims as you indicated. However, this witness [Brawley] in this case has already testified at great length, and it sounds like the majority of [her] testimony would in fact be a repetition and duplicate of what she's already testified. In the court's eyes, and in the court's discretion, would unnecessarily bolster her testimony by basically repeating that again for the jury. I think the purpose for which you are offering that [the video] can be achieved through other questioning. At this time I'm going to sustain the objection on those grounds.

Farm Bureau did not ask to play the video with the sound muted. Instead, counsel continued to question Hall in detail about the video.

We review the trial court's decision to exclude the audio portion of the video for an abuse of discretion. *Lampe v. Taylor*, 338 S.W.3d 350, 360 (Mo.App. 2011). "An abuse of discretion occurs when the court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Beaty v. St. Luke's Hosp. of Kansas City*, 298 S.W.3d 554, 558 (Mo.App.2009). This Court defers to the trial court's determination of admissibility because it is in a superior position to evaluate the proffered evidence in the context of the trial. *Id.* "The court can reject the evidence or fashion some other appropriate remedy." *Id.* at 560. To reverse the court's determination, we must find that the Farm Bureau was prejudiced because the exclusion of the audio portion materially affected the merits of its action. *Id.* at 558.

Farm Bureau argues the trial court abused its discretion in excluding the audio portion of the video because it was critical to Farm Bureau's misrepresentation defense and would have demonstrated that Farm Bureau did not act in a vexatious manner in denying Myers' claim. We disagree.

In deciding whether to admit the video and, if so, what portions to admit depended on whether the video was "practical, instructive, and calculated to assist the trier of fact in understanding the case." *Saint Louis University v. Geary*, 321 S.W.3d 282, 290 (Mo. banc 2009). The trial court decided that the video portion was helpful, but Brawley's audio commentary was cumulative. We find no abuse of discretion in that ruling. When the video was offered, Brawley had already testified at length regarding each and every item she believed was fraudulently misrepresented in the inventory of Myers' personal property claim. Brawley's narration of the video would have been duplicative of her earlier trial testimony and would not have assisted jurors any further. A trial court may exclude cumulative evidence. *Burns v. Elk River Ambulance, Inc.*, 55 S.W.3d 466, 483 (Mo.App.2001). The court advised defense counsel to question Hall further about the video, which counsel did. Farm Bureau has failed to demonstrate that the trial court's ruling was so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Beaty*, 298 S.W.3d at 558. The trial court did not abuse its discretion in excluding the audio portion of the video. Point III is denied.

The judgment of the trial court is affirmed. Because Farm Bureau's statutory obligation to pay Myers' reasonable attorney's fees has already been established by the jury verdict and judgment entered thereon, Myers' motion for attorney's fees on appeal is sustained. § 375.420; *Hensley v. Shelter Mut. Ins. Co.*, 210 S.W.3d 455, 477 (Mo.App.2007). The case is remanded for the trial court to conduct a hearing to determine the reasonableness of Myers' requested attorney's fees on appeal and to enter judgment accordingly.

RAHMEYER, P.J., and FRANCIS, J.