

# In the
# Missouri Court of Appeals
# Western District

SHANISHA L. SAULSBERRY,

        **Appellant,**

v.

U.S. TOY COMPANY, INC.,

        **Respondent.**

**WD77562**

**ORDER FILED:**

**AUGUST 11, 2015**

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable David Michael Byrn, Judge**

**Before Division Three: Karen King Mitchell, P.J., Thomas H. Newton, and Anthony Rex**

**Gabbert, JJ.**

Shanisha L. Saulsberry appeals the circuit court's judgment entered upon a jury verdict finding in favor of Saulsberry on her negligence claim against U.S. Toy Company, Inc. (U.S. Toy). Saulsberry alleged that she was injured at a U.S. Toy store after store racks fell upon her. The jury awarded Saulsberry $7,216.00 for economic damages. Saulsberry asserts five points on appeal. First, she claims that the circuit court erred in excluding evidence of her medical expenses because they were relevant to damages and admissible as business records and she was not responsible for any late production of the records in that any "discovery sanctions" neither followed the dictates of Rule 61's mandated notice and hearing provisions nor advanced the purposes of deterrence of discovery abuse by penalizing Saulsberry rather than Saulsberry's

lawyer.  Second, Saulsberry contends that the circuit court erred in not conducting an evidentiary hearing pursuant to Section 490.715, RSMo Cum. Supp. 2013, and *Deck v. Teasley*, 322 S.W.3d 536 (Mo. banc 2010), because Saulsberry had witnesses who could have laid a proper foundation and described the reasonable value of their services in that the statute by its plain language permits a party to testify about their own medical expenses, and medical experts had testified to the reasonable value of the services.  Third, Saulsberry contends that the circuit court erred in admitting, over her objection, the hearsay testimony of Dr. Jay Zwibelman, because the testimony reflected the opinion of counsel about rank hearsay, did not come in the form of an opinion, and was an unduly prejudicial comment on Saulsberry's motives in bringing the lawsuit in that the witness was reading another physician's note about which he had no personal knowledge and that reflected another person's opinion, and he was not expressing his opinion to a reasonable degree of medical certainty.  Fourth, Saulsberry contends that the circuit court erred in admitting, over her objection, the hearsay testimony of Dr. Bernard Abrams because the testimony was inherently speculative, not given to a reasonable degree of medical certainty and was an unduly prejudicial comment on Saulsberry's motives in bringing the lawsuit in that the witness was merely listing a number of factors that could have been responsible for Saulsberry's inability to walk, and was not expressing an opinion to a reasonable degree of medical certainty. Finally, Saulsberry contends that the circuit court erred in refusing to admit the economist's report because the economist's report was based on the lifecare planner's report which had firm evidentiary support, in that the trial court had redacted portions of the lifecare planner's report based on its earlier errant rulings and this erroneous redaction made the economist's report which was otherwise admissible, inadmissible resulting in prejudice to plaintiff.  We affirm.

2

## Factual and Procedural Background

On October 18, 2008, Saulsberry was shopping at a U.S. Toy store when store racks filled with Halloween costumes fell upon her. Saulsberry filed a negligence suit against U.S. Toy on October 6, 2010, claiming to have sustained permanent injuries, including being confined to a wheelchair as a result of the incident and U.S. Toy's negligence. She first attempted to litigate the suit *pro se*, however counsel entered an appearance on Saulsberry's behalf on September 23, 2011. A trial was scheduled for January 23, 2012. After Saulsberry's counsel moved to continue the trial, the case was scheduled for May 21, 2012. On May 18, 2012, Saulsberry moved to voluntarily dismiss the case and the court granted that dismissal.

On October 18, 2012, Saulsberry refiled her suit. On February 23, 2013, the case was set for jury trial on January 6, 2014. On December 27, 2013, new counsel entered an appearance on Saulsberry's behalf. On December 31, 2013, Saulsberry filed a motion for continuance and later that same day filed a supplemental motion for continuance. Saulsberry's former counsel also requested leave to withdraw. On January 2, 2014, the court denied the continuance as well as the motion to withdraw. On January 6, 2014, the day of trial, the court revisited Saulsberry's supplemental motion for a continuance as Saulsberry was unavailable. The court continued the trial to January 21, 2014.

After hearing approximately three days of evidence, the jury returned a verdict against U.S. Toy and in favor of Saulsberry. The jury was instructed that, if it found U.S. Toy negligent and that such negligence caused damage to Saulsberry, the jury must award Saulsberry such sum as it believed would fairly and justly compensate Saulsberry for any damages that the jury believed were sustained by Saulsberry and would be reasonably certain to sustain in the future as

3

a direct result of the negligence. The jury awarded Saulsberry $7,216 for economic damages. Saulsberry appeals arguing that we must remand for a new trial for reconsideration of Saulsberry's damages.

## Point I: Exclusion of Evidence

In Saulsberry's first point on appeal she claims that the circuit court erred in excluding evidence of her medical expenses because they were relevant to damages and admissible as business records and she was not responsible for any late production of the records in that any "discovery sanctions" neither followed the dictates of Rule 61's mandated notice and hearing provisions nor advanced the purposes of deterrence of discovery abuse by penalizing Saulsberry rather than Saulsberry's lawyer.

"'We review the trial court's admission or exclusion of evidence under a deferential standard of review.'" *McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 183-184 (Mo. App. 2012) (quoting *Ziolkowski v. Heartland Regional Medical Center*, 317 S.W.3d 212, 216 (Mo. App. 2010)). "'On appellate review, the issue is not whether the evidence was admissible, it is whether the trial court abused its discretion in excluding the evidence.'" *Id.* "A circuit court has broad discretion in determining the admission of evidence and imposing sanctions for discovery violations." *Lewellen v. Franklin*, 441 S.W.3d 136, 149 (Mo. banc 2014). A court abuses its discretion only where the court's ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Johnson*, 207 S.W.3d 24, 40 (Mo. banc 2006). "If reasonable persons may differ as to the propriety of an action taken by the trial court, then there was no abuse of discretion." *State v. Quick*, 334 S.W.3d 603, 609 (Mo.App.2011) (citing *State v. Reed*, 282

4

S.W.3d 835, 837 (Mo. banc 2009)). "Even if there is an error, this [c]ourt will not reverse a judgment unless the erroneous sanction resulted in prejudice." *Lewellen*, 441 S.W.3d at 149.

With regard to the evidence that Saulsberry argues was erroneously excluded, the record reflects that on May 8, 2013, U.S. Toy filed an Amended Second Motion to Enforce Discovery and Suggestions in Support pursuant to Rule 61.01 and Local Rule 32.2.4. Therein, U.S. Toy alleged that Saulsberry's response was incomplete with regard to Interrogatory No. 9 which U.S. Toy contended was a Jackson County approved interrogatory. The interrogatory asked Saulsberry to "[i]temize any special damages other than lost earnings which you claim" including doctor bills, hospital bills, drugs, and other special damages. Saulsberry's response to this interrogatory stated: "Hospital Bills: $1,114,876.40 (Does not include bills for the year 2012-2013)"; "Drugs: $10,949.23." U.S. Toy argued that, although a compact disk (CD) had been provided that included some bills and some records, the bills did not total the amount claimed and some providers on the disk did not appear with the doctors Saulsberry named in Interrogatory No. 11.

In response to U.S. Toy's motion, Saulsberry contended that, by listing the cost for each category of bills, Saulsberry had complied with the interrogatory and further stated:

> [T]he documents produced provide the information from which Plaintiff's medical providers and the medical bills can be gleaned which makes the motion nonsensical. . . . This amended motion for enforcing discovery is frivolous because the medical invoices produced by Plaintiff itemize the services that Plaintiff received which are essentially what Interrogatory No. 9 is requesting. . . . Plaintiff provided all the medical bills for the service providers between 2008-2011. There is no real genuine discovery issue other than Defendant through its counsel insists on litigating this case in a cantankerous, rancorous manner. . . . The Defendant has all the invoices for medical services provided to the Plaintiff. The invoices list the provider and services rendered, as such Plaintiff has fully answered Interrogatory 9.

5

On July 23, 2013, the court considered U.S. Toy's motion to enforce discovery and, based upon Saulsberry's averments that all bills and records relating to Interrogatory No. 9 had been included on the CD provided to U.S. Toy, the court indicated that although Interrogatory No. 9 appeared insufficient on its face, "Plaintiff shall be bound by the extent of her disclosures/responses to discovery which are contained on the CD." Five months later, on January 3, 2014 and the Friday before trial was to begin the following Monday on January 6, Saulsberry attempted to supplement her discovery with additional medical records and bills.[1] After the trial was continued for Saulsberry's unavailability, Saulsberry again supplemented her discovery.

At trial the parties discussed the admissibility of the supplemented records. Saulsberry claimed that the supplementation should be admissible because "[p]rior to that time, the plaintiff did not have possession of those records and did not have control over those records." When the court questioned Counsel about Saulsberry not having control over her own medical records, Counsel responded, "Well, certainly, she could have requested them, just …." Counsel indicated that Saulsberry had provided a signed release that would have allowed U.S. Toy to obtain the records. The court inquired of Saulsberry's counsel: "Is there a claim by the plaintiff that the additional information was otherwise made known to defendant during discovery? Are you claiming that was done? I'm using the words of the rule in asking the question." Counsel responded that the nature of Saulsberry's injury indicated ongoing treatment due to a chronic condition. Further, because U.S. Toy had a release of information, it changed Saulsberry's "responsibility to affirmatively get the records."

---

[1]This supplementation has not been provided in the record on appeal.

U.S. Toy argued that the supplementation was unseasonable as the initial response was given in June of 2013 and, therefore, everything up to that date should have been provided and it was not. U.S. Toy contended that it relied on the discovery that was returned and, as a result, did not depose Saulsberry after obtaining her initial deposition because there were no additional topics to cover. U.S. Toy contended that it would be prejudiced by now having to address nearly a million dollars of medical bills that it had never been provided.

The court concluded that the supplementation that was provided two days before the scheduled January 6, 2014, trial was unseasonable and prejudicial to U.S. Toy. The court further concluded that the supplementation that was provided after the trial was scheduled to commence, but was delayed for the sole reason that Saulsberry was unavailable, would not have existed had the trial moved forward as scheduled and was also unseasonable. The court excluded testimony as to those records. The court indicated, however, that if a witness of U.S. Toy had reviewed any of the excluded records and testified regarding those, the court might reconsider its ruling as it pertained to prejudice.

On appeal, Saulsberry argues that the trial court erred because the exclusion of medical expense evidence prevented the case from being heard on the merits and "the incredibly low verdict in comparison to the life-altering injuries, demonstrate a need for appellate oversight and correction." Saulsberry also contends that the court acted under the erroneous belief that the predicate for sanctions under Rule 61 had occurred when it excluded the evidence. Saulsberry justifies non-seasonable supplementation of the discovery by arguing that the interrogatory request by U.S. Toy was generic and did not use language that would have captured later-occurring medical data.

With regard to Saulsberry's claim that the interrogatory was generic, we note that the interrogatory specifically asked for any special damages being claimed and requested itemized statements from doctors regarding such claims. If Saulsberry expected to recover specific damages, it was only reasonable that Saulsberry must also expect to seasonably provide notice of those damages through supplementation.

Further, upon review of the record we find it unlikely that the court excluded the evidence because it was acting under an erroneous belief that the predicate for sanctions under Rule 61 had occurred. While the record reflects that the court made a comment stating that it "allowed the motion to enforce discovery," and it had actually denied U.S. Toy's motion and instead mandated that Saulsberry be bound by the content of the provided CD, the court's focus in the discussion surrounding that statement is that Saulsberry had contended that the CD contained all of her bills and records and the court had accepted that. Never did the court indicate that Saulsberry was in violation of any order to enforce discovery. The record is clear that the court rendered its decision based on the previous averments made by Saulsberry and her attempt two days prior to the scheduled hearing to add additional medical expenses that she intended to claim as damages.

We note that Rule 61.01(b) allows the court to make such orders as are just if a party fails to answer interrogatories.[2] Rule 56.01(e) requires seasonable supplementation of interrogatory responses. "The trial court has broad discretion to control discovery**."** *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997). "This discretion extends to the trial court's choice of remedies in response to the non-disclosure of evidence or witnesses during discovery." *Id.* at

---

[2]Rule 61.01(d)(1) allows the court to prohibit a party that fails to produce documents and tangible things from introducing designated matters into evidence.

647-648. Here, however, the court's decision to exclude the evidence appears more as enforcement of a previous order based on an averment made by Saulsberry and prejudice that would result to U.S. Toy if Saulsberry was not held to that averment, than a sanction for discovery violations.[3] Nevertheless, insofar as it could be considered such, we will not address Saulsberry's claims that the court did not follow the dictates of Rule 61. Saulsberry did not make any such claim in her motion for new trial and, therefore, has failed to preserve such claims for review. "[A]llegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." Rule 84.13(a).

We find no abuse of discretion. Given Saulsberry's previous stance on supplementing the interrogatory, the court was well within its discretion to exclude evidence included in supplementation provided two days before trial and after trial was to have commenced. Point one is denied.

### Point II: Evidentiary Hearing

In Saulsberry's second point on appeal she contends that the circuit court erred in not conducting an evidentiary hearing pursuant to Section 490.715, RSMo Cum. Supp. 2013, and *Deck v. Teasley*, 322 S.W.3d 536 (Mo. banc 2010), because Saulsberry had witnesses who could have laid a proper foundation and described the reasonable value of their services in that the statute by its plain language permits a party to testify about their own medical expenses, and medical experts had testified to the reasonable value of the services. Saulsberry argues that the court erred in both interpreting and applying Section 490.715. She contends that a hearing on the

---

[3]We note that Saulsberry does not contend that the court erred in *denying* U.S.Toy's motion to enforce discovery and denying U.S. Toy's request to require her to supply more bills and records. Saulsberry likewise does not contend that, in so denying U.S. Toy's motion, the court erred in ordering her bound by the extent of her disclosures and responses to discovery that was contained on the CD.

9

issue of collateral sources is required pursuant to Section 490.715. She maintains that, because the court never heard any evidence and determined the value of medical services based on the argument of counsel "and what counsel intended to offer, the court omitted the key step required by the statute." We find no error.

Section 490.715.5 provides:

(1) Parties may introduce evidence of the value of the medical treatment rendered to a party that was reasonable, necessary, and a proximate result of the negligence of any party.

(2) In determining the value of the medical treatment rendered, there shall be a rebuttable presumption that the dollar amount necessary to satisfy the financial obligation to the health care provider represents the value of the medical treatment rendered. Upon motion of any party, the court may determine, outside the hearing of the jury, the value of the medical treatment rendered based upon additional evidence, including but not limited to:

(a) The medical bills incurred by a party;

(b) The amount actually paid for medical treatment rendered to a party;

(c) The amount or estimate of the amount of medical bills not paid which such party is obligated to pay to any entity in the event of a recovery.

In *Deck v. Teasley*, the Missouri Supreme Court held that Section 490.715 creates a rebuttable presumption that the dollar amount paid to satisfy the financial obligation to a health care provider is the value of the medical treatment rendered, however, when substantial evidence is submitted rebutting that presumption, the case must be decided on the basis as if no presumption existed. 322 S.W.3d at 539. If the presumption is rebutted, it disappears. *Id.* "However, the facts that gave rise to the presumption remain in the case and along with the facts to the contrary, are considered by the fact-finder like any other evidence." *Id.* "A presumption places the burden of producing substantial evidence to rebut the presumed fact on the party against whom the presumption operates." *Id.*

10

We review questions of statutory interpretation *de novo*.  *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014).  Our primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue.  *Id.*  Saulsberry contends that the most important language of the foregoing statute is that the court must determine the value of the medical treatment "outside the hearing of the jury."  She contends that this language means that there must be a hearing.

We disagree that the legislature intended "outside the hearing of the jury" to mean that the court is required to conduct a hearing.  The statute simply requires by its plain language that any evidence that is presented to the court pursuant to the statute shall be presented outside the presence of the jury.  Further, we find nothing within the statute that requires a hearing where, as here, the proponent of the hearing has no evidence to introduce that would be admissible at trial.  The court did not refuse a *Deck* hearing.  Upon request for the *Deck* hearing, however, the court painstakingly reviewed the evidence that Saulsberry intended to introduce and had a frank discussion with Counsel, outside the hearing of the jury, that the evidence that Saulsberry intended to present at a *Deck* hearing would be inadmissible at trial, either because it had been excluded as untimely or because there was no proper foundation for its admittance.  The record reflects that Counsel appeared to understand but, nevertheless, argued:

> But on the other hand, we do want to make a record that if there was a *Deck* hearing that was allowed to go beyond the scope that you just outlined, we would submit to the Court testimony from Ms. Saulsberry about bills that she receives in the mail.  And we would go through those bills in a very tedious fashion and refresh her recollection on those bills that she received and about her personal knowledge regarding the fact that those bills have been paid in order to introduce additional evidence of the reality of the damages that she's incurred.

In response, the court confirmed with Counsel the evidence Saulsberry intended to present at a *Deck* hearing.  Counsel indicated that it was limited in its ability to present evidence

11

based on previous counsel's failure to provide business record affidavits with some of the records as well as excluded evidence based on untimely supplementation. However, Counsel indicated that Saulsberry would present testimony from Saulsberry herself that the medical services she received were customary, reasonable, and necessary and that the bills and charges were reasonable. Counsel further indicated that Saulsberry intended to present testimony from Sheryl Bunce, a nurse who had already testified regarding a life care plan she established for Saulsberry. Finally, Counsel indicated that Saulsberry intended to present testimony from a legal secretary who had summarized Saulsberry's bills on a medical damage chart.

After hearing an explanation of the evidence Saulsberry intended to present, the court explained that Section 490.715 itself does not independently meet the foundational requirements for the admission of medical records and that the foundational requirements still must be met in order for records to be admitted into evidence at trial. The court explained:

> To the extent, at a *Deck* hearing, if there is no foundation that is going to be laid for the records, in other words, if you don't intend to bring a medical records custodian in and lay an independent foundation for records, there is, in my opinion, no point in addressing that at a *Deck* hearing, because I could hear whatever evidence you present at a *Deck* hearing. But if you don't then lay the foundation for records coming in, what's the point?

The court indicated that Saulsberry could not testify that the medical expenses were reasonable, customary, or necessary such that she could lay the foundation for admission of the medical expenses incurred. The court stated that testimony from the legal secretary who compiled and charted Saulsberry's medical bills and expenses would have little value as, having no medical background or expertise, she could only testify that she compiled a summary of Saulsberry's bills. As to Bunce, the court indicated that the court was aware of what Bunce's testimony would be, as Bunce had already testified. The court stated that Bunce had testified to

12

some extent that the medical treatment was necessary but she also deferred to doctors and others in her testimony and Bunce is not a physician.

Thus, it is clear from the record that the court's conclusion that Saulsberry's intended evidence was inadequate to rebut the presumption set forth in Section 490.715.5(2) was not based on the court erroneously weighing competing evidence as Saulsberry contends in her brief, but rather the court's recognition that evidence that was inadmissible could not be legitimized via a *Deck* hearing. Upon review of the record, we conclude that the court did not err in failing to conduct an evidentiary hearing pursuant to Section 490.715 and *Deck v. Teasley*. A plain reading of Section 490.715 does not unequivocally require a hearing and we find no hearing necessary where the only evidence intended to be submitted at the hearing is not admissible at trial. Point two is denied.

### Point III: Testimony of Dr. Jay Zwibelman

In her third point on appeal, Saulsberry contends that the circuit court erred in admitting, over her objection, the hearsay testimony of Dr. Zwibelman, because the testimony reflected the opinion of counsel about rank hearsay, did not come in the form of an opinion, and was an unduly prejudicial comment on Saulsberry's motives in bringing the lawsuit in that the witness was reading another physician's note about which he had no personal knowledge and that reflected another person's opinion, and he was not expressing his opinion to a reasonable degree of medical certainty. We find no error.

We review the trial court's decision to admit evidence for abuse of discretion. *Beaty v. St. Luke's Hosp. of Kansas City*, 298 S.W.3d 554, 558 (Mo. App. 2009). "We defer to the trial court's determination of admissibility because it is in a superior position to evaluate the proffered evidence in the context of the trial." *Id.* (internal quotation and citation omitted). To reverse for

13

the erroneous admission of evidence, we must find that the admission prejudicially affected the merits of the appellant's action. *Id.*

Saulsberry does not dispute that the medical record from which Zwibelman derived his testimony was in Exhibit 113 which was offered into evidence by Saulsberry. In her reply brief, Saulsberry contends that the record was only offered by her in response to a ruling by the trial court. It is unclear what ruling Saulsberry references. Saulsberry presented the exhibit during her case in chief when Dr. Cielo Navaro-Dehning, designated by Saulsberry as an expert witness, testified. Counsel for Saulsberry asked Dehning to review records covering when Saulsberry was admitted to Overland Park Regional and asked Dehning to note the doctors that the records reflected were involved in treating Saulsberry. After Dehning testified to the various doctors that Saulsberry encountered and services that were rendered based on Exhibit 112, Dehning was asked if "there is any better document that we could look at that would tell us which doctors examined [Saulsberry] while she was at Overland Park after this occasion?" Dehning responded: "I would say the consultation report is in the chart, progress notes and such." Counsel for Saulsberry asked Dehning to identify Exhibit 113. Dehning testified that Exhibit 113 contained progress notes written by various doctors who treated Saulsberry. It appears from the transcript that Dehning testified extensively regarding various notes recorded by various doctors in Exhibit 113.[4] On cross-examination, Dehning was asked about a note in the record "from the psych fellow." Counsel stated: "And it refers to secondary gain. Could you tell the jury what

---

[4]We note that Exhibit 113 is not included in the record provided on appeal to allow us to compare the exhibit with Dehning's testimony. "It is the appellant's burden to supply the record necessary for our review." *R.K. Matthews Inv., Inc. v. Beulah Mae Housing, LLC*, 379 S.W.3d 890, 892 n.2 (Mo. App. 2012) (internal quotation and citation omitted). "Where exhibits are not made a part of the record on appeal, such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appeal." *Id.* (internal quotation marks and citations omitted).

14

secondary gain is?" Saulsberry's counsel objected and the court overruled the objection. The testimony continued and Dehning testified that secondary gain refers to a patient doing something or presenting in a way so that they can get money or some sort of compensation. Dehning also testified that she saw a reference in the record to a lawsuit regarding U.S. Toy. Saulsberry does not appeal the admission of this testimony.

Later in Dehning's cross-examination, Dehning testified to notes from doctors at her hospital indicating that Saulsberry herself was requesting multiple imagery studies. These notes were introduced in Exhibit 712 by U.S. Toy. Dehning testified that a Dr. Arkin had noted in the record that "spasms" of Saulsberry's legs appeared voluntary and were not present until about thirty minutes into the doctor's visit. Dehning also testified that in the last sentence of the record Dr. Arkin states: "She has extensive secondary gain, not to mention probably litigation involved." Dehning testified that, although other doctors in her facility believed that secondary gain may have contributed to Saulsberry's expressed symptoms, Dehning did not agree. The record reflects that Saulsberry also voluntarily broached the topic of secondary gain with her testifying expert, Delbert Reece.[5]

Zwibelman's deposition testimony, which Saulsberry herein argues was erroneously admitted into evidence and was prejudicial because it discussed secondary gain, was presented

---

[5]Counsel for Saulsberry asked Reece several questions related to customary information that a doctor might include in a patient's records. Counsel asked Reece if it was within his realm of understanding that there may be a request by a patient for compensation from some other person for the harms that have been caused them. Counsel asked, "And so, you've heard of the term, perhaps you have, secondary gain?" The doctor indicated that he was aware of what secondary gain was and Counsel asked the doctor if he had an opinion on secondary gain. The doctor replied: "I think it is when somebody is trying to manipulate the circumstances where they get something, usually financial, that really is not appropriate for the circumstances." Counsel then asked Reece if he had had an opportunity to review the testimony in some of the depositions in Saulsberry's case. The doctor replied that he had not and the discussion regarding secondary gain ended.

15

last at trial. In his deposition, Zwibelman reads what he believes to be the content of a note contained in Exhibit 113. The contested testimony from Zwibelman is as follows:

U.S. TOY COUNSEL: I'm going to show you a note that's dated the next day, October 25. It mentions there – I'm trying to figure out if you can read that. It refers to secondary gain. What is that?

ZWIBELMAN: Secondary gain would be the term used if somebody's actions or behaviors are being – are a result of – they get something because of it. Somebody might feign an injury if they feel they could get a reward out of it, for example. Somebody might get attention by acting like they're sick. Those would be examples of secondary gain.

U.S. TOY COUNSEL: All right. Now, there's a reference there to a lawsuit at U.S. Toy. Can you read that for me? . . .

ZWIBELMAN: Let's see if I can read it. Wants to return home. That's number 1. Number 2, the first word, I cannot read, then something placed by lawsuit at U.S. Toy, but I don't know – or legal. Legal hyphen want to placed something lawsuit at U.S. Toy, and then there's a word in parentheses, and I don't know what it says. …

U.S. TOY COUNSEL: All right. So from what you can tell in that, one week after that accident, there's references then to a lawsuit against U.S. Toy and secondary gain; is that right?

ZIBELMAN: That's what he's alluding to in that note.

Saulsberry asserts that she made a timely motion to strike Zwibelman's opinion related to secondary gain, and expanded that objection in her Motion in Limine and Trial Brief. In reviewing the record, we find that the court addressed Counsel's Motion in Limine from the bench. The court indicated that the court had read the deposition excerpt and, in considering the probative value versus the prejudicial effect, concluded that the jury could consider the weight of Zwibelman's testimony as well as Counsel's associated conclusory question. The court noted that the jury "could draw conclusions from that question in context with the prior questions, as to whether or not the witness, in reading the note, himself reached the same conclusion."

16

Upon review of the record, we disagree with Saulsberry's contention that U.S. Toy "sought to admit this as the 'opinion'" of Zwibelman. The content of the testimony makes it clear that Zwibelman was merely attempting to decipher another doctor's note in the record. Although not transcribed here for the sake of brevity, from the record there appears to be some initial confusion by counsel for U.S. Toy as to whether Zwibelman was the author of the note. As we have not been provided Exhibit 113 on appeal, we cannot determine if this confusion was justified.

Even if Saulsberry could prove that Zwibelman's testimony should have been excluded, she fails to prove prejudice. Saulsberry herself admitted Exhibit 113 into evidence. The jurors had the opportunity to examine the exhibit and reach their own conclusions as to the value of its content. The fact that the attorney, and not Zwibelman, used the term "secondary gain" to reference the content of the note cannot be proven prejudicial as the term "secondary gain" had been described and discussed at trial by both of Saulsberry's experts before Zwibelman's testimony was ever admitted. We find that the circuit court did not abuse its discretion in admitting the testimony of Dr. Zwibelman.[6] Point three is denied.

**Point IV: Testimony of Dr. Bernard Abrams**

In her fourth point on appeal, Saulsberry contends that the circuit court erred in admitting, over her objection, the hearsay testimony of Dr. Bernard Abrams because the testimony was inherently speculative, not given to a reasonable degree of medical certainty and was an unduly prejudicial comment on Saulsberry's motives in bringing the lawsuit in that the

---

[6]Saulsberry argues in her reply brief that, because Zwibelman never read the words "secondary gain" in response to the question presented, his answer was thus unresponsive and irrelevant and should have been excluded from evidence. We decline to address this argument raised for the first time on appeal.

17

witness was merely listing a number of factors that could have been responsible for Saulsberry's inability to walk, and was not expressing an opinion to a reasonable degree of medical certainty. We find that Saulsberry has failed to preserve this claim.

The disputed "testimony" to which Saulsberry refers appears to be derived from a deposition excerpt of Abrams that Saulsberry attached to her Plaintiff's Trial Brief. In that brief, Saulsberry argued that testimony regarding Saulsberry's alleged motive to exaggerate or respond untruthfully should be excluded as speculative, highly prejudicial, and as invading the province of the jury. Saulsberry argued that Abrams's testimony should be excluded because Abrams had questioned the legitimacy of the Saulsberry's symptoms and had discussed the issue of "secondary gain."

A review of the record reveals that Abrams's deposition was never admitted at trial. Saulsberry references it in her appellate brief as being located at page 972 of the legal file; page 972 of the legal file is part of Saulsberry's pre-trial brief. The transcript reflects that Abrams testified in person at trial and that Saulsberry objected to none of Abrams's testimony. Abrams testified that all of his opinions were given with a reasonable degree of medical certainty. On appeal, Saulsberry points to no evidence at trial or testimony by Abrams at trial that was objectionable. All of Saulsberry's complaints appear to stem from comments Abrams made in the deposition that was never put before the jury.

We find that, even if Abrams testified to something at trial that Saulsberry now finds objectionable, she failed to preserve her claims for appellate review by failing to object at trial and failing to include any objections in her motion for new trial. "[A]llegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." Rule 84.13(a). Point four is denied.

18

## Point V:  Economist's Report

In Saulsberry's final point on appeal, she contends that the circuit court erred in refusing to admit the economist's report because the economist's report was based on the lifecare planner's report which had firm evidentiary support, in that the trial court had redacted portions of the lifecare planner's report based on its earlier errant rulings and this erroneous redaction made the economist's report which was otherwise admissible, inadmissible resulting in prejudice to Saulsberry.

In reviewing Saulsberry's argument, we find that her main contention is that "the court's earlier rulings on the admissibility of medical records created cumulative error" that affected her ability to admit the economist's report and "spilled over and infected the fairness of the trial." Saulsberry, in effect, contends that it was impossible for the jury to return a verdict of only $7,491.09 after concluding that Saulsberry was damaged by U.S. Toy's negligence without there being court error.  We disagree.

As we have found no "earlier errant rulings" by the court, we cannot conclude that the effect of any evidentiary rulings on the lifecare planner's report and the economist's report was cumulative error.  Further, despite Saulsberry's complaints regarding her inability to enter evidence regarding damages, the record reflects that she presented a significant amount of evidence regarding damages at trial.  Although the economists report may have been rejected because items were contained therein for which no foundation had been established, the economist, Kurt Krueger, still directly testified as to various categories of future medical costs for which there was a foundation:  physician care, $154,756; psychological care, $12,595; supportive care, $2,921,249; Craig Hospital, $75,757; medications, $3,552,835; laboratory and

19

diagnostics, $122,711; medical supplies, $19,371; assistive devices, $73,965; transportation, $122,730, and home modification, $161,000. Additionally, Sheryl Bunce testified that she determined through Saulsberry's life care plan that the estimated dollar figure for Saulsberry's required care was $6,503,207.00. Bunce separated Saulsberry's various needs into categories and testified to projected expenditures for each category.

"The plaintiff bears the burden to prove that the defendant was negligent and that the injuries directly resulted from the defendant's negligence." *Giles v. Riverside Transport, Inc.*, 266 S.W.3d 290, 300 (Mo. App. 2008) (internal quotations and citations omitted). While Saulsberry presented evidence that she suffers permanent, debilitating conditions that she believes are the result of U.S. Toy's store racks falling upon her, evidence was also presented that various medical professionals have no explanation for some of Saulsberry's physical conditions and/or complaints. Further, evidence was presented that Saulsberry had experienced both physical and psychological issues prior to the incident at U.S. Toy. Thus, the jury's verdict regarding damages does not demand a conclusion of court error, as Saulsberry contends, but merely reflects that, while the jury believed that Saulsberry suffered some injury as a result of U.S. Toy's negligence, the jury chose not to believe that the extent of the injuries claimed by Saulsberry were the result of U.S. Toy's negligence. The circuit court did not abuse its discretion in refusing to admit the economist's report into evidence. Point five is denied.

We conclude, therefore, that: 1) The circuit court did not abuse its discretion in excluding from evidence as unseasonable and prejudicial various medical expenses that Saulsberry attempted to submit three days prior to trial and after trial was to have already commenced. Saulsberry averred to the court that all such expenses were contained in a CD provided to U.S. Toy and the court ordered her bound by that averment; 2) The circuit court did not err in failing

20

to conduct a hearing pursuant to Section 490.715 and *Deck v. Teasley*. Section 490.715 does not unequivocally require a hearing and we find no hearing necessary where the only evidence intended to be submitted at the hearing is not admissible at trial; 3) The circuit court did not abuse its discretion in admitting the testimony of Dr. Zwibelman. Saulsberry herself admitted Exhibit 113, from which Zwibelman's testimony was derived, into evidence and counsel's reference to secondary gain was not prejudicial; 4) Saulsberry has failed to preserve for review her claim regarding Dr. Abrams's testimony; and 5) The circuit court did not abuse its discretion in excluding the economist's report as we find no cumulative errors contributing to the exclusion of the economist's report and no prejudice. We affirm the circuit court's judgment.

_____
Anthony Rex Gabbert, Judge

All concur.

21